**STATE of Tennessee,**
**Plaintiff/Appellee,**

v.

**Joseph GIECK, Defendant/Appellant.**

Court of Criminal Appeals of Tennessee,
at Nashville.

Dec. 15, 1999.

Application for Permission to Appeal
Denied by Supreme Court
May 15, 20000.

Paul G. Summers, Attorney General & Reporter, Elizabeth T. Ryan, Assistant Attorney General, Nashville, TN, for appellee.

Joe L. Finley, Jr., Assistant Public Defender, Cookeville, TN, for appellant.

## OPINION

L.T. LAFFERTY, Senior Judge.

The appellant, Joseph Gieck, hereinafter as "the defendant," appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the judgment of the White County Criminal Court. A White County jury found the defendant guilty of harassing phone calls and stalking. The trial court imposed concurrent sentences of eleven (11) months and twenty-nine (29) days, all suspended but five (5) days. The defendant was given certain conditions while on probation and was enjoined from harassing, bothering, or interacting with the victims in this cause. The defendant presents one appellate issue:

Whether the trial court erred in allowing proof of alleged harassing phone calls and stalking over a period from December, 1996, to November, 1997, when the indictment charged that both the stalking and harassing phone calls happened on or about November 1, 1997.

After a review of the entire court record, briefs of the parties, and applicable law, we AFFIRM the trial court's judgment.

## FACTUAL BACKGROUND

Mrs. Phyllis Dwyer testified that she met the defendant through his relationships with her two daughters, Barbara and Susan Woodruff. The defendant was married to Barbara, age 31, and they had two children. Prior to the events in this cause, the defendant and Dwyer's other daughter, Susan, had lived together for three years. They had two children, Tiffany Woodruff and Joseph Woodruff.[1] Mrs. Dwyer testified that she is very familiar with the defendant's voice, and in December, 1996, the defendant and Susan separated. The Department of Human Services assumed custody of the two children but placed them with the grandparents, Mrs. Dwyer and her husband, Doug Dwyer. Mrs. Dwyer stated that her daughter, Susan, had moved to Overton County. The defendant had supervised visitation rights with his two children for an hour each Wednesday.

Mrs. Dwyer testified that in the spring, the defendant started calling all the time, and she asked him not to. The Dwyers were to have no contact with the defendant, but he kept calling. Mrs. Dwyer stated that the defendant spoke in a nice voice telling them that his children were not going to be in the Dwyer home. He told the Dwyers that if they did not voluntarily put the kids somewhere else, he would make sure that they paid for it. She stated that these phone calls came

---

1. These two children, after problems at school, sought judicial approval to change their names to Woodruff.

every two or three days. In the summer of 1997, the defendant got more obnoxious and hateful. Mrs. Dwyer testified that the defendant started threatening her and her daughter, Ryanne, age 11, making comments such as:

> [H]e knew that I took my daughter to school every day because she didn't like riding the bus, and he would make comments like I know the routes you travel, I know, you know, where you go, that he would be there, he would always be there and to always look behind you.... [H]e actually said that he would run me off the road, my car. He would make sure that I was dead first. Then he would take Ryanne. He seemed to think it was his job to turn her into a woman.

The defendant also made some sexual remarks about what he would do to Ryanne, which alarmed Mrs. Dwyer. She advised her daughter to be very careful.

Mrs. Dwyer testified that on various occasions, after picking the two children up from visitation, she would see the defendant on the road in different places. The defendant would follow her and became more brazen, which caused her to drive to the police department. Mrs. Dwyer testified that on November 12, 1997, she had picked up the kids at McDonald's and saw the defendant in a white two-door care behind Mrs. Dwyer's car. The defendant's girlfriend was in the car. He then drove to the police department. In cross-examination, Mrs. Dwyer stated that the defendant would gesture with his finger up and would be right behind her in the car. The children were afraid and laid on the floorboard of Mrs. Dwyer's car.

Mr. Neil Doug Dwyer testified that he and Phyllis Dwyer have been married 12 years and have one daughter, Ryanne, age 11. Mr. Dwyer was aware of the phone calls made by the defendant to his wife. He stated that he would accompany his wife in another vehicle when she picked up Tiffany and Joseph after visitation. In the six times Mr. Dwyer accompanied his wife, he saw the defendant closely follow his wife. When the defendant saw Mr. Dwyer, he would turn off.

Amanda Gieck testified that she married the defendant in October, 1997. Mrs. Gieck began accompanying her husband to his visitations with the children in July or August, 1997. Mrs. Gieck owned a white two-door car. She stated that she would drive to the visitation site, since the defendant did not have a driver's license. Mrs. Gieck testified that neither she nor the defendant ever followed the Dwyers.

The defendant testified that he and Susan Woodruff separated in December, 1996, and their two children were taken by the Department of Human Services and placed with the Dwyers. The defendant admitted that he had been back and forth to court over the custody of his two children. He stated that he was fearful for the children to live in Dwyer's home. The defendant testified that he obtained the right to visit with the children in February, 1997, and that the visits were to take place at McDonald's or the Department of Human Services. He denied following Mrs. Dwyer after each visitation, in that his driver's license had been suspended and his wife had to drive him back and forth for visitation. The defendant also denied calling the Dwyer's home. In cross-examination, the defendant stated that he did not harass the Dwyers, but admitted he was upset over their custody of his two children.

## LEGAL ANALYSIS

The defendant asserts that the trial court was in error for permitting the State to prove numerous phone calls between February, 1997, and November 1997, and the stalking of Mrs. Dwyer from December, 1996 to November, 1997, because the indictment alleges only one offense on November 12, 1997. Thus there is a fatal variance between the indictment and the proof at trial, and the defendant argues that he was unable to adequately prepare

a defense. The State counters that it is not required to allege that these offenses occurred on a certain date, because neither harassing phone calls or stalking are date-specific offenses. Thus, the State argues that there is no material variance between the indictment and proof at trial.

Count one of the indictment alleges:

that Joseph Gieck heretofore on or about the 12th day of November, 1997, in White County, Tennessee, and before the finding of this indictment did intentionally place one (1) or more telephone calls anonymously, or at an inconvenient hour, or in an offensively repetitious manner, or without a legitimate purpose of communication, and by this action knowingly annoyed or alarmed the recipient, to wit: Phyllis Dwyer in violation of T.C.A. 39–17–308, and against the peace and dignity of the State of Tennessee.

Count two of the indictment alleges::

And the Grand Jurors for the State of Tennessee upon their oath do further present that JOSEPH B. GIECK on or about the 12th day of November, 1997, in White County, Tennessee, and before the finding of this indictment did unlawfully, intentionally, and repeatedly follow or harass PHYLLIS DWYER and RYANNE DWYER [in] such a manner that caused PHYLLIS DWYER and RYANNE DWYER to be in reasonable fear of being assaulted or suffering bodily injury in death by following me [sic] in White County in his vehicle and calling PHYLLIS DWYER and RYANNE DWYER at her home on numerous times, in violation of T.C.A. 39–17–315, and against the peace and dignity of the State of Tennessee.

Since the defendant contends there is a fatal variance between the allegation in the indictment and the proof at trial, we must determine from the record the correctness of this argument. In *State v. Moss*, 662 S.W.2d 590 (Tenn.1984), our Supreme Court laid aside "the early common law rule that every strict conformity was re-quired between the allegations of the indictment and the proof, even in minor and immaterial respects." *Id.* at 592. Adopting the standard set forth in *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Court announced:

Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*Moss*, 662 S.W.2d at 592.

Due to the allegations in this two count indictment, we do not find that there was a material variance between the date and the proof at trial. As authority, the defendant cites *State v. Mayes*, 854 S.W.2d 638 (Tenn.1993). The facts in *Mayes* are totally dissimilar to the facts in this case. In *Mayes*, the Supreme Court considered whether the indictment required the name of the purchaser in an illegal drug sale as an element of the offense. Although the indictment in *Mayes* named a purchaser, the proof revealed another person made the actual buy. The Court found that the variance was not material and did not prejudice the defendant's substantial rights. Tennessee Code Annotated § 40–13–207 provides that, "[t]he time at which an offense was committed need not be stated in the indictment, but the offense may be alleged to have been committed on any day before the finding thereof, or generally before the finding of the indictment, unless the time is a material ingredient of the offense." The Supreme Court in *State v. Byrd*, 820 S.W.2d 739 (Tenn.1991), held that "[t]he rule of law is well-established in

Tennessee that the exact date, or even the year, of an offense need not be stated in the indictment or presentment unless the date or time 'is material ingredient in the offense'." *Id.* at 741.

Our Supreme Court, in *State v. Hoxie,* 963 S.W.2d 737 (Tenn.1998), addressed the question of the necessity of an election in felony stalking and misdemeanor harassing telephone calls:

> Reviewing the statutory definition it is clear that the crime of stalking is not committed upon a single, discrete act by the defendant, unlike the sex offenses involved in Burlison and its progeny. Instead, the statute which defines stalking as criminal offense contemplates a series of discrete actions amounting to a continuing course of conduct. To obtain a conviction for stalking, the State must prove beyond a reasonable doubt that the defendant engaged in the prohibited conduct, "repeatedly," which is defined by the statute as "two (2) or more separate occasions." Likewise, the statute defines "follows" as "maintaining a visual or physical proximity over a period of time to a specific person." Finally, "harasses" is defined as a["]course of conduct directed at a specific person." By definition, therefore, the offense of stalking, [sic] requires proof of a continuous course of conduct.

* * *

> Likewise, the offense of telephone harassment for which the defendant was convicted contemplates a continuing course of conduct. Tenn.Code Ann. § 39–17–308 (1997 Repl.).

*Id.* at 742–43. (emphasis added).

We agree with the State that the defendant was given sufficient notice that he was to be prosecuted for a series of stalking and harassing telephone calls over a time period, not withstanding the single date of an offense alleged in the indictment. We find there was not a material variance between the indictment and the proof at trial so as to preclude the defendant from preparing a defense. Likewise, the defendant is not subject to prosecution for each single act or conduct occurring between December, 1996, and November 12, 1997.

The trial court's judgment is affirmed.

RILEY and HAYES, JJ., concur.